NOT DESIGNATED FOR PUBLICATION

No. 114,936

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

BRIAN LY QUANG NGO,
*Appellant*.

MEMORANDUM OPINION

Appeal from Cloud District Court; KIM W. CUDNEY, judge. Opinion filed February 17, 2017. Sentence vacated and case remanded with directions.

*Kai Tate Mann*, of Kansas Appellate Defender Office, for appellant.

*Robert A. Walsh*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., GREEN, J., and BURGESS, S.J.

*Per Curiam*: In this sentencing appeal, the only question that is raised is whether Brian Ly Quang Ngo has a criminal history score of A. From the record that we have before us, we cannot answer that question and, therefore, remand this case to the district court for the court to make appropriate judicial factfindings under the modified categorical approach as set out in the caselaw.

We first review how far a judge can go in deciding the facts of criminal histories. After that, we explore the differences of divisible and indivisible statutes. Finally, after our discussion of the two approaches to statutory comparisons—categorical and modified

1

categorical—we hold that the statutes involved here, one from Texas and one from Kansas, do not criminalize identical conduct. This results in our remand order directing the court to follow a modified categorical approach when it resentences Ngo.

*After his guilty plea, the question of Ngo's criminal history arose.*

Ngo pled no contest to one count of forgery, a level 8 nonperson felony according to K.S.A. 2014 Supp. 21-5824. The district court decided Ngo's criminal history score was A based on its determination that he had three prior person felony convictions. By counting Ngo's two prior Kansas person felonies and adding together two Kansas class A or B misdemeanor convictions with a Texas misdemeanor conviction for terroristic threat, the court decided Ngo had a third person felony.

The court sentenced Ngo to 21 months' imprisonment—the presumptive sentence for the severity level of the offense and his criminal history score. In this appeal, Ngo challenges, for the first time, whether it was proper to use a Texas misdemeanor conviction for terroristic threat in order to turn three misdemeanors into one person felony.

*The presentence report revealed the details of Ngo's convictions.*

Ngo has two prior person felony convictions; one for burglary and one for domestic battery. In order to reach the third person felony, three adult misdemeanors were converted into a single person felony. The three misdemeanors that were converted were two Kansas offenses—battery and domestic battery, and one Texas offense— terroristic threat.

*Ngo can challenge his criminal history score in this appeal.*

Even though this issue was not presented to the district court, because Ngo is not challenging the existence of the Texas conviction, but rather its use for aggregation, it is proper to raise the issue for the first time on appeal. *State v. Dickey*, 305 Kan. 217, 380 P.3d 230 (2016) (*Dickey II*). Essentially, Ngo is challenging that his sentence is illegal for not conforming to the statutory provisions. An illegal sentence can be challenged at any time, and the invited error doctrine does not apply in this case because a defendant cannot stipulate to an illegal sentence. See *State v. Dickey*, 301 Kan. 1018, 1034, 350 P.3d 1054 (2015) (*Dickey I*).

Specifically, Ngo is challenging whether Kansas has a comparable crime to Texas' terroristic threat statute. This question requires this court to interpret the Kansas Sentencing Guidelines Act, K.S.A. 21-6801 *et seq*. Interpretation of the Act is a question of law over which this court exercises unlimited review. *Dickey II*, 305 Kan. at 220.

When Ngo committed his crime, K.S.A. 2014 Supp. 21-6811 called for the aggregation of prior criminal convictions. K.S.A. 2014 Supp. 21-6811(a) states: "Every three prior adult convictions or juvenile adjudications of class A and class B person misdemeanors in the offender's criminal history shall be rated as one adult conviction or one juvenile adjudication of a person felony for criminal history purposes."

Additionally, K.S.A. 2014 Supp. 21-6811(e) provides for the use of out-of-state convictions in calculating criminal history scores. Subsection (e) states that out-of-state convictions and juvenile adjudications shall be used in classifying the offender's criminal history. An out-of-state crime will be classified as either a felony or a misdemeanor according to the convicting jurisdiction. The statute  also explains how person and nonperson felonies are to be determined when dealing with out-of-state convictions.

3

K.S.A. 2014 Supp. 21-6811(e). This subsection does not explicitly state how to classify out-of-state misdemeanor convictions for aggregation purposes.

*We relate the Constitutional limits to sentence enhancements by judges.*

Two United States Supreme Court cases outline the constitutionality of increasing a defendant's sentence. According to *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt.

The second case is *Descamps v. United States*, 570 U.S. _____, 133 S. Ct. 2276, 186 L. Ed. 2d 438 (2013). In *Descamps*, the Court differentiated between divisible and indivisible statutes. 133 S. Ct. at 2281-82. An indivisible statute has a single set of elements which make up a single version of the crime. 133 S. Ct. at 2281. A divisible statute has alternative elements which make up alternative versions of the crime. 133 S. Ct. at 2281. For indivisible statutes, the sentencing court is limited to an analysis of the elements of the crime—the categorical approach. 133 S. Ct. at 2283.

For divisible statutes, when one of the alternative versions of the crime in the out-of-state jurisdiction corresponds to the sentencing state's statute but another alternative version does not, the sentencing court may look at a limited set of documents to determine which alternative version of the out-of-state jurisdiction's statute the defendant was convicted under—the modified categorical approach. *Descamps*, 133 S. Ct. at 2284-86. On divisible statutes: "Our decisions authorize review of the plea colloquy or other approved extra-statutory documents only when a statute defines burglary not (as here) overbroadly, *but instead alternatively, with one statutory phrase corresponding to the generic crime and another not*." (Emphasis added.) 133 S. Ct. at 2286.

4

*Descamps* analyzed the Armed Career Criminal Act and set out constitutional tests for applying prior convictions to the Act. 133 S. Ct. at 2281-82. Our Supreme Court in *Dickey I* used the constitutional framework set out in *Descamps* to analyze the Kansas sentencing statutes. 301 Kan. at 1038-39. The court stated: "The categorical approach and modified categorical approach described in *Descamps* ensure that sentencing courts, when examining a prior conviction for sentencing purposes, do not engage in fact finding in violation of *Apprendi* by attempting to determine whether a defendant's actions satisfied an element not contained within the statute under which the defendant's prior conviction arose." 301 Kan. at 1038-39.

*How do the relevant Kansas and Texas statutes compare?*

There are comparable terroristic threat crimes in Texas and Kansas. We must then first see which analytical method must be used for our comparison. That depends on whether the laws are divisible or indivisible. If the statutes are indivisible then the categorical approach applies, but if the statutes are indivisible and share at least one version of crime then the modified categorical approach applies. *Descamps*, 133 S. Ct. at 2286.

The relevant portion of the Texas statute states:

"(a) A person commits an offense if he threatens to commit any offense involving violence to any person or property with intent to:

(1) cause a reaction of any type to his threat by an official or volunteer agency organized to deal with emergencies;

(2) place any person in fear of imminent serious bodily injury;

(3) prevent or interrupt the occupation or use of a building, room, place of assembly, place to which the public has access, place of employment or occupation, aircraft, automobile, or other form of conveyance, or other public place." Tex. Penal Code Ann. § 22.07(a)(1-3) (West 2005).

5

The Texas statute has three additional subsections, which are punished as felonies. See Tex. Penal Code Ann. § 22.07(a)(4-6). We do not examine the felony subsections since Ngo was only convicted of a misdemeanor in Texas.

It is obvious that this statute is a divisible statute, because it provides three alternative intent elements which can be used to support a conviction. See *Descamps*, 133 S. Ct. at 2281.

Turning to the Kansas criminal threat statute under K.S.A. 2014 Supp. 24-5415, the law states:

"(a) A criminal threat is any threat to:

(1) Commit violence communicated with intent to place another in fear, or to cause the evacuation, lock down or disruption in regular, ongoing activities of any building, place of assembly or facility of transportation, or in reckless disregard of the risk of causing such fear or evacuation, lock down or disruption in regular, ongoing activities;

(2) adulterate or contaminate any food, raw agricultural commodity, beverage, drug, animal feed, plant or public water supply; or

(3) expose any animal in this state to any contagious or infectious disease.

"(b) Aggravated criminal threat is the commission of a criminal threat, as defined in subsection (a), when a public, commercial or industrial building, place of assembly or facility of transportation is evacuated, locked down or disrupted as to regular, ongoing activities as a result of the threat."

The language of the Kansas statute shows that it is also a divisible statute—there are different elements which lead to the alternative methods of conviction. Because both Texas and Kansas statutes are divisible, the analysis becomes whether at least one of the alternative methods of committing the crime in Texas is criminalized by the Kansas statute. See *Descamps*, 133 S. Ct. at 2286.

The Kansas and Texas statutes criminalize some of the same conduct. The Texas statute criminalizes a threat which places a person in fear of imminent serious bodily injury. Tex. Penal Code Ann. § 22.07(a)(2). The Kansas statute criminalizes a threat with the intent to place another in fear. K.S.A. 2014 Supp. 24-5415(a)(1). By criminalizing a threat with the intent to place another in fear, the Kansas statute necessarily criminalizes a threat that places a person in fear of imminent serious bodily injury.

Additionally, the Texas statute criminalizes threats of violence which "prevent or interrupt" the occupation of various areas. Tex. Penal Code Ann. § 22.07(a)(3). Criminal threat in Kansas criminalizes the same type of conduct. The action which is criminalized under the Kansas statute is a threat either intentionally or recklessly "to cause an evacuation, lockdown or disruption in regular, ongoing activities" of various types of buildings. K.S.A. 2014 Supp. 24-5415(a)(1). Texas criminalizes threats which cause the evacuation of automobiles and aircrafts, but the Kansas statute only criminalizes threats which affect facilities of transportation. See Tex. Penal Code Ann. § 22.07(a)(3); K.S.A. 2014 Supp. 24-5415(a)(1).

Although the Texas statute criminalizes a broader set of actions than the Kansas statute, to be comparable the statutes only need to criminalize similar, but not identical, types of conduct. *State v. Moore*, 52 Kan. App. 2d 799, 810, 377 P.3d 1162 (2016). Here, the action punished is threatening. The intent required in both are similar enough to conclude the statutes criminalize comparable conduct.

Because the Kansas statute criminalizes at least some conduct which is criminalized under the Texas statute, the analysis must proceed to determine whether any of the actions under the Texas statute are *not* criminal under the Kansas statute. See *Descamps*, 133 S. Ct. at 2286.

7

Subsection (a)(1) of the Texas statute criminalizes threats of violence with the intent to cause a response by emergency authorities. Tex. Penal Code Ann. § 22.07(a)(1). The Kansas statute does not criminalize this type of conduct or comparable conduct. So a person could be convicted of that crime in Texas and not convicted for similar actions in Kansas.

We hold the modified categorical approach must be used here. Both statutes are divisible and both statutes criminalize at least one of the same alternative ways of completing the crime. But the Texas statute criminalizes conduct that the Kansas statute does not. This situation is where the modified categorical approach should be applied to determine if Ngo's offense falls into the alternative, which is criminal under both statutes. See *Descamps*, 133 S. Ct. at 2286.

Under these circumstances, it is appropriate for a court to do limited judicial factfinding to determine the elements of the prior offense and compare them to the elements of the Kansas statute. The factfinding is limited to reviewing "charging documents, plea agreements, jury instructions, verdict forms, and transcripts from plea colloquies as well as findings of fact and conclusions of law from a bench trial. [Citation omitted]." *Dickey I*, 301 Kan. at 1038.

We therefore vacate Ngo's sentence and remand this case to the district court to apply the modified categorical approach outlined in *Decamps* during resentencing. See *Moore*, 52 Kan. App. 2d at 812.

Sentence vacated and case remanded with instructions.