NOT DESIGNATED FOR PUBLICATION

No. 116,749

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

LANCE GLEN DAVIS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; CHRISTOPHER M. MAGANA, judge. Opinion filed December 29, 2017. Affirmed.

*Kimberly Streit Vogelsberg* and *Clayton J. Perkins*, of Kansas Appellate Defender Office, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GARDNER, P.J., BUSER and ATCHESON, JJ.

PER CURIAM: On appeal, Defendant Lance Glen Davis challenges his criminal history and the resulting sentence he received after pleading guilty to burglary in Sedgwick County District Court. He contends an Oregon conviction and two Kansas juvenile adjudications were incorrectly used to elevate his criminal history classification. We find no error and affirm the sentence.

1

Davis was charged with burglary, a felony, and misdemeanor theft for an incident that happened on April 23, 2015—the details of the crime are irrelevant but that date and several others in the criminal prosecution have some bearing on the legal arguments presented to us. Davis pleaded guilty on June 13, 2016, and was sentenced on July 27. In the district court, Davis did not dispute his criminal history classification of A, the highest category.

For felony convictions, a presumptive punishment is derived from a statutorily mandated sentencing grid, a matrix that uses the severity level of the crime of conviction as one axis and the defendant's criminal history classification as the other axis. The point at which the axes intersect on the grid yields presumptive high, middle, and low sentences expressed in months of imprisonment. So the higher a defendant's criminal history classification, the longer the presumptive sentence for a given crime. For Davis, the district court found the presumptive sentences for the burglary conviction to be 30, 32, and 34 months in prison. The district court imposed the low presumptive sentence of 30 months for the burglary and a concurrent jail term of 12 months for the misdemeanor theft.

Davis has appealed the burglary sentence on the grounds his criminal history was incorrectly determined and should have been lower. Misdemeanor sentences are not determined from the statutory grid, and Davis has not challenged the sentence he received for the theft.

On appeal, Davis says his 2008 conviction for assault in the third degree in Oregon should have been treated as a nonperson felony rather than a person felony for criminal history purposes. Person felonies have a more severe impact on a defendant's criminal history than do nonperson felonies. Davis also says Kansas juvenile court adjudications from 2005 for what would have been felony criminal threat and felony criminal discharge of a firearm into an occupied building should not have counted at all

in determining his criminal history. If Davis were correct on either or both assertions, his criminal history classification would be lower, as, in turn, would his presumptive sentence. Because we ultimately reject those assertions, we do not go through the academic exercise of calculating possible presumptive sentences Davis might have received.

The issues Davis has raised do not entail disputed material facts and, therefore, present questions of law to which we apply plenary review. Both sides fight over whether the issues have been properly presented on appeal and, if so, who bears the burden of proof. We step past that skirmishing and head to the merits.

We first take up Davis' Oregon conviction. The Oregon statute under which Davis was convicted criminalized a fairly broad range of actions as assault in the third degree this way:

"(1) A person commits the crime of assault in the third degree if the person:

(a) Recklessly causes serious physical injury to another by means of a deadly or dangerous weapon;

(b) Recklessly causes serious physical injury to another under circumstances manifesting extreme indifference to the value of human life;

(c) Recklessly causes physical injury to another by means of a deadly or dangerous weapon under circumstances manifesting extreme indifference to the value of human life;

(d) Intentionally, knowingly or recklessly causes, by means other than a motor vehicle, physical injury to the operator of a public transit vehicle while the operator is in control of or operating the vehicle. As used in this paragraph, 'public transit vehicle' has the meaning given that term in ORS 166.116;

(e) While being aided by another person actually present, intentionally or knowingly causes physical injury to another;

(f) While committed to a youth correction facility, intentionally or knowingly causes physical injury to another knowing the other person is a staff

3

member of a youth correction facility while the other person is acting in the course of official duty;

(g) Intentionally, knowingly or recklessly causes physical injury to an emergency medical technician or paramedic, as those terms are defined in ORS 682.025, while the technician or paramedic is performing official duties;

(h) Being at least 18 years of age, intentionally or knowingly causes physical injury to a child 10 years of age or younger; or

(i) Knowing the other person is a staff member, intentionally or knowingly propels any dangerous substance at the staff member while the staff member is acting in the course of official duty or as a result of the staff member's official duties.

. . . .

"(2) Assault in the third degree is a Class C felony. When a person is convicted of violating subsection (1)(i) of this section, in addition to any other sentence it may impose, the court shall impose a term of incarceration in a state correction facility.

"(3) As used in this section:

(a) 'Dangerous substance' includes, but is not limited to, blood, urine, saliva, semen and feces.

(b) 'Staff member' means:

(A) A corrections officer as defined in ORS 181.610, a youth corrections officer, a Department of Corrections or Oregon Youth Authority staff member or a person employed pursuant to a contract with the department or youth authority to work with, or in the vicinity of, inmates or youth offenders; and

(B) A volunteer authorized by the department, youth authority or other entity in charge of a corrections facility to work with, or in the vicinity of, inmates or youth offenders.

(c) 'Youth correction facility' has the meaning given that term in ORS 162.135." Or. Rev. Stat. § 163.165.

The Kansas Criminal Code directs how out-of-state convictions are to be treated for criminal history purposes:  The foreign jurisdiction's classification of the crime as a felony or misdemeanor controls, K.S.A. 2014 Supp. 21-6811(e); and the conviction will

4

be classified as a person offense or a nonperson offense based on how Kansas treats a "comparable" offense, K.S.A. 2014 Supp. 21-6811(e). If Kansas has no comparable offense, the conviction must be considered as a nonperson offense. K.S.A. 2014 Supp. 21-6811(e). The comparability determination is made under the Kansas Criminal Code in effect at the time the defendant committed the crime for which he or she is being sentenced—here, that would be Davis' burglary. K.S.A. 2014 Supp. 21-6811(e). To determine comparability, the district court should examine the statutory elements of the out-of-state crime and the statutory elements of any potentially comparable Kansas crime. *State v. Williams*, 299 Kan. 870, 873-74, 326 P.3d 1070 (2014). The elements need not be identical; the crimes will be treated as comparable if the analysis shows they "cover a similar type of criminal conduct." *State v. Fahnert*, 54 Kan. App. 2d 45, Syl. ¶ 2, 396 P.3d 723 (2017). The comparison entails a legal exercise based purely on the statutory descriptions of the crimes. The particular facts associated with the defendant's conviction are irrelevant. *Williams*, 299 Kan. at 874-75.

Nobody disputes Oregon treats a conviction under Or. Rev. Stat. § 163.165 as a felony. Accordingly, the district court correctly considered Davis' conviction that way for criminal history purposes. An examination of the elements of Or. Rev. Stat. § 163.165 shows the statute criminalizes eight forms of conduct resulting in some degree of physical injury to another person. The lone exception is found in subsection (1)(i), which requires no injury. The Oregon statute, then, is "comparable" within the meaning of K.S.A. 2014 Supp. 21-6811(e) and *Williams* to most forms of aggravated battery and battery criminalized in K.S.A. 2014 Supp. 21-5413. A few of the crimes defined in K.S.A. 2014 Supp. 21-5413 require only "physical contact . . . done in a rude, insulting[,] or angry manner." See, e.g., K.S.A. 2014 Supp. 21-5413(a)(2), (b)(1)(C). The differences between Or. Rev. Stat. § 163.165 and K.S.A. 2014 Supp. 21-5413 are minor. The two statutes criminalize comparable, though not identical, forms of wrongdoing. Every violation of K.S.A. 2014 Supp. 21-5413 is a person offense. Davis' conviction for

5

violating Or. Rev. Stat. § 163.165 should be treated as a person offense for criminal history purposes.

Davis, however, contends that Or. Rev. Stat. § 163.165 is broader than K.S.A. 2014 Supp. 21-5413 because it criminalizes conduct that does not result in physical injury and, therefore, implicates judicial fact-finding limited by the rules recognized in *Descamps v. United States*, 570 U.S. 254, 133 S. Ct. 2276, 186 L. Ed. 2d 438 (2013); *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000); and *State v. Dickey*, 301 Kan. 1018, 350 P.3d 1054 (2015). Those cases recognize that consistent with the United States Constitution's Sixth Amendment right to jury trial, a jury must find any fact used to enhance a defendant's sentence other than those facts inherently established by the elements of a defendant's past conviction considered for criminal history purposes. Davis says that subsection 1(i) of Or. Rev. Stat. § 163.165 would not amount to battery or aggravated battery under K.S.A. 2014 Supp. 21-5413. And nothing in the record establishes his Oregon conviction was *not* for Or. Rev. Stat. § 163.165(1)(i). According to Davis, the district court necessarily engaged in impermissible fact-finding to treat the conviction as a person offense.

Even under Davis' analysis, however, no fact-finding was necessary either in the district court or here to classify his Oregon conviction as a person offense. Basically, Or. Rev. Stat. § 163.165(1)(i) criminalizes intentionally or knowingly throwing statutorily identified bodily substances at corrections officers, whether or not the officer is actually struck by the substance. A defendant actually striking a law enforcement officer or corrections officer with a bodily fluid would be committing criminal battery in violation of K.S.A. 2014 Supp. 21-5413. See *State v. Day*, No. 113,171, 2015 WL 7190602, at *3 (Kan. App. 2015) (unpublished opinion) (spitting on law enforcement officer supported criminal battery conviction); *State v. Welch*, No. 109,343, 2014 WL 4080064, at *2-3 (Kan. App. 2014) (unpublished opinion) (same); *State v. Deleon*, No. 92,756, 2005 WL 2665685, at *2 (Kan. App. 2005) (unpublished opinion) (throwing unknown liquid,

6

possibly urine, on corrections officer supported criminal battery conviction). Intentionally trying to do so but failing—essentially the crime codified in Or. Rev. Stat. § 163.165(1)(i)—would constitute an attempted criminal battery. See K.S.A. 2014 Supp. 21-5301(a) (defining attempt). An attempt to commit a person offense is itself classified as a person offense. K.S.A. 2014 Supp. 21-5301(c)(1) (attempt to commit nondrug felony ranked at two levels below the severity level for the completed offense); K.S.A. 2014 Supp. 21-5301(e) (attempt to commit class A person misdemeanor, such as battery, constitutes a class B person misdemeanor).

The upshot is that a conviction for Or. Rev. Stat. § 163.165(1)(i) would amount to a person offense under Kansas law. In turn, any conduct criminalized under Or. Rev. Stat. § 163.165 would be a person offense, so no judicial fact-finding would be required to consider Davis' Oregon conviction as a person offense for compiling his criminal history. The district court did not err in treating the conviction as a person felony.

For his second point, Davis contends his juvenile adjudications should not have been counted in his criminal history. As a general rule in Kansas, the punishment for a crime is fixed at the time the crime is committed. See *State v. Keel*, 302 Kan. 560, Syl. ¶ 9, 357 P.3d 251 (2015), *cert. denied* 136 S. Ct. 865 (2016). So a legislative reduction in punishment that goes into effect after that but before a defendant is sentenced would not be applied to the defendant. Applying an increased punishment would violate the Ex Post Facto Clause of the United States Constitution. See *State v. Myers*, 260 Kan. 669, Syl. ¶ 5, 923 P.2d 1024 (1996).

In 2015, when Davis committed the burglary and theft for which he was sentenced in this case, his juvenile adjudications would have counted in determining his criminal history classification. K.S.A. 2014 Supp. 21-6810(d)(3)(B). But, as Davis points out, the Legislature amended the statute in 2016 so that specified juvenile adjudications no longer would be counted. K.S.A. 2016 Supp. 21-6810(d)(4)(B). The amendment went into effect

7

July 1, 2016, less than a month before Davis' sentencing, and covered the types of juvenile adjudications he had. But under the general rule recognized in *Keel*, they would still be counted against Davis, since the trigger date for him was April 23, 2015, when he committed the burglary and theft.

Davis, however, argues that the version of K.S.A. 2016 Supp. 21-6810(e) in effect when he was sentenced made the changes retroactive. At that time, subsection (e) stated: "The amendment made to this section by this act are procedural in nature and shall be construed and applied retroactively." The Legislature added the subsection in 2015 as part of H.B. 2053—that's "the act" referred to in the statutory language—for the specific purpose of legislatively overruling *State v. Murdock*, 299 Kan. 312, 323 P.3d 846 (2014), *overruled by State v. Keel*, 302 Kan. 560, 357 P.3d 251 (2015), which addressed how convictions entered before the sentencing guidelines became effective should be treated for criminal history purposes. (The legislative change became superfluous when the court overruled *Murdock* in *Keel*, 302 Kan. 560, Syl. ¶ 9.) In short, K.S.A. 2016 Supp. 21-6810(e) was passed the year before the amendment on which Davis relies and was intended to make only the so-called "*Murdock* fix" retroactive. Nothing more. That's reasonably ascertainable from the reference to "the act," meaning a specific piece of legislation, in K.S.A. 2016 Supp. 21-6810(e). Davis' argument that the amendment affecting juvenile adjudications was to be applied retroactively (and, thus, in his case) fails. The argument depends upon the improbable notion the Legislature intended K.S.A. 2016 Supp. 21-6810(e) to be a blanket declaration that all future amendments to the statute would be applied retroactively.

If there were some question about that interpretation of K.S.A. 2016 Supp. 21-6810, it was erased when the Legislature clarified subsection (e) during the 2017 session. The Legislature passed a revision of the subsection referring specifically to "section 1 of chapter 5 of the 2015 Session Laws" as the amendments to be applied retroactively. L. 2017, ch. 92, § 5. As we have noted, the 2015 measure codified H.B. 2053 and its

8

negation of *Murdock*. A clarifying amendment, as the term suggests, does not substantively change an existing statute but merely illuminates the legislative intent behind the original measure and should be applied accordingly. See *United States v. Geerken*, 506 F.3d 461, 465 (6th Cir. 2007) (discussing clarifying amendments in context of United States Sentencing Guidelines); *Liquilux Gas Corp. v. Martin Gas Sales*, 979 F.2d 887, 890 (1st Cir. 1992). The 2017 amendment buttresses our conclusion.

The district court sentenced Davis using an accurate criminal history classification based on his Oregon conviction and Kansas juvenile adjudications.

Affirmed.