Filed 9/11/15  P. v. Inman CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>      v.<br><br>MICHAEL WAYNE INMAN,<br><br>      Defendant and Appellant. | D066916<br><br><br>(Super. Ct. No. SCN320624) |

APPEAL from a judgment of the Superior Court of San Diego County, Harry M. Elias, Judge.  Affirmed in part and reversed in part with directions.

Laura P. Gordon, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland, Scott Taylor and Paige B. Hazard, Deputy Attorneys General, for Plaintiff and Respondent.

After a bench trial, the court found defendant and appellant Michael Wayne Inman guilty of: unlawfully annoying and molesting a child under 18 years of age, with a prior

felony conviction (Pen. Code,[1] § 647.6, subds. (a)(1) & (c)(2); count 1); and indecent exposure, with two prior convictions (§ 314, subd. (1); count 2). The court also found true defendant had previously been convicted of three prior strike offenses (§§ 667, subds. (b)-(i), 1170.12 & 668), two serious felonies (§§ 667, subd. (a)(1), 668 & 1192.7, subd. (c)) and eight prison prior offenses (§§ 667.5, subd. (b) & 668).

The court exercised its discretion under *People v. Romero* (1996) 13 Cal.4th 497 and dismissed two of defendant's strike priors based on remoteness. The court sentenced defendant on count 1 to six years, doubled to 12 based on the third strike prior; the upper term of three years doubled to six on count 2, which the court stayed pursuant to subdivision (a) of section 654; and, as relevant here, to consecutive eight years for each of defendant's eight prison priors, for a total term of 20 years.

On appeal, defendant claims the evidence was insufficient to prove his third prison prior based on a 1986 Utah conviction for burglary following defendant's guilty plea.[2] (§ 667.5, subd. (b).) The People agree. The parties, however, disagree on whether the matter should be remanded to allow the prosecutor the opportunity to retry the 1986 Utah conviction as a prison prior, as the People contend, or whether this prior should be stricken and defendant's sentence reduced accordingly, as he contends.

---

[1]     All statutory references are to the Penal Code unless otherwise noted.

[2]     In a petition for writ of habeas corpus (D066929), defendant raises various other claims including ineffective assistance of counsel in advising him to waive a jury trial, the erroneous admission of evidence of prior similar bad acts and whether his sentence constitutes cruel and unusual punishment. In a separate order filed concurrently with this opinion, we deny the petition.

As we explain, we conclude that there is insufficient evidence in the record to support defendant's 1986 Utah prison prior; that this prison prior should be struck; and that defendant's sentence should be reduced accordingly.

OVERVIEW

In the afternoon of May 17, 2013, then 16-year-old victim Natalia P. was riding a transit bus after school to her grandmother's house in the North County of San Diego. Natalia initially boarded the bus with school friends, and they sat in the back of the bus. After her friends got off the bus, a man later identified as defendant moved from the front of the bus to the back and sat directly in front of Natalia.

Carmen P. was sitting across the aisle when the man sat down near Natalia. Carmen saw the man spread his legs apart and noticed near his groin a hole in his pants about the size of a baseball. Carmen saw the man's penis, noticed the man made no attempts to cover himself and instead "blatantly" exposed himself to her. Carmen at the same time heard the man asking Natalia many personal and inappropriate questions, including how old she was, where she lived and when was she getting off the bus. As the man continued to ask Natalia questions, Carmen observed Natalia looked "real scared."

As the man's persistent questioning of Natalia continued, Carmen saw the man face the girl, expose himself and begin touching and massaging his penis. While he touched his penis, the man told Natalia she was a "good girl." Carmen felt disgusted by the man.

Natalia testified she initially was polite to the man when he first sat down by her but then tried to ignore him as he continued to ask her personal and inappropriate questions. She estimated the man spoke to her for about 10 or 15 minutes. At some point

3

when the man repeatedly asked Natalia why she would not talk or pay attention to him, Natalia looked over at him and saw him "masturbating." Specifically, Natalia stated that the man was facing her; that his penis was erect and was visible through a hole in the middle of his pants; and that he was using his hand to rub his penis. According to Natalia, the man looked her in the eye and just smiled. Natalia estimated the man was "less than arm length" away from where she was sitting as he was masturbating. Scared and worried the man might sexually assault her, Natalia cried.

Natalia testified another bus passenger, whom she later learned was Carmen, began yelling at the man. Until this incident, Natalia and Carmen had never met. The man in response got off the bus at the next stop. Natalia went to Carmen and sobbed. The two reported the incident to the bus driver, and the police were called.

A few days later, Carmen and Natalia separately identified defendant in a photographic lineup as the man exposing himself on the bus. The police also obtained and reviewed a copy of the surveillance video from the bus, which was consistent with the reports and statements made by Natalia, Carmen and others. At the time of the incident, defendant was on parole as a result of prior sex offense convictions and was required to wear a GPS monitoring device. Records subsequently obtained by the police in connection with that device showed defendant was in fact on the same bus as the victim at the time of the incident.

DISCUSSION

As noted, defendant contends—and the People concede—that the evidence was insufficient to prove that his 1986 Utah burglary conviction qualified as a prison prior for purposes of the one-year enhancement under section 667.5, subdivision (b).

Subdivision (f) of section 667.5 provides: "A prior conviction of a felony shall include a conviction in another jurisdiction for an offense which, if committed in California, is punishable by imprisonment in the state prison or in county jail under subdivision (h) of Section 1170 if the defendant served one year or more in prison for the offense in the other jurisdiction. A prior conviction of a particular felony shall include a conviction in another jurisdiction for an offense which includes *all of the elements of the particular felony as defined under California law* if the defendant served one year or more in prison for the offense in the other jurisdiction." (Italics added.)

Here, the record shows the prosecutor submitted certified documents establishing defendant pleaded guilty in March 1986 in the Third Judicial District Court, Salt Lake County, State of Utah, to burglary, "a felony, of the 3rd degree" and to "theft," a "class B misdemeanor." The certified documents also included photographs and the fingerprints of defendant. The fingerprint card states defendant was sentenced to five years six months on both counts. The probation report in the instant case states that, in connection with the 1986 Utah conviction, defendant "was arrested for stealing an employee's wallet out of the back storeroom of the Coach House Gift Store (Adult Probation Officer's report dated 06/15/05)."

As relevant here, in 1986 (and today) the Utah burglary statute provided: "An actor is guilty of burglary who enters *or remains* unlawfully in a building or any portion

5

of a building with intent to commit: [¶] . . . [¶] (b) theft; . . ."  (Utah Code, § 76-6-202, subd. (1)(b), italics added.)  In contrast, section 459 (of the California Penal Code) defines burglary as follows:  "Every person who enters any house, room, apartment, tenement, shop, warehouse, store, mill, barn, stable, outhouse or other building, tent, vessel . . . with intent to commit grand or petit larceny or any felony is guilty of burglary."

There is a primary difference between the elements of burglary in Utah and in California: unlike California law which requires a felonious intent at the time of entry (*People v. Holt* (1997) 15 Cal.4th 619, 669), Utah law allows a defendant to be convicted of burglary even if the defendant did not enter with such intent, as long as a defendant "remains unlawfully" after such entry.  (*State v. Reece* (Utah 2015) 349 P.3d 712, 721 [citing Utah Code § 76-6-202 and noting "a person can commit burglary without stealing anything—a person who commits any felony while remaining unlawfully inside a building is also guilty of burglary"]; see *People v. Sparks* (2002) 28 Cal.4th 71, 85, fn. 17 [noting the burglary statutes "in some jurisdictions . . . include in their definition of burglary the situation where one enters *or remains* with the requisite intent" and further noting § 459, "by contrast, requires an *entry* with requisite intent"].)

Thus, a person could be convicted of burglary in Utah for remaining unlawfully inside a building and committing theft, for example, while that same crime would not constitute a burglary in California.  As such, the 1986 Utah conviction of defendant may not have included "all of the elements" (§ 667.5, subd. (f)) of burglary as defined in section 459.

Because the People must prove all elements of an alleged sentence enhancement beyond a reasonable doubt (*People v. Miles* (2008) 43 Cal.4th 1074, 1082) and because there is no factual basis in the record establishing defendant entered the building with the intent to commit theft in connection with his 1986 Utah conviction, we agree with the parties and conclude the true finding on this conviction must be reversed.

Defendant contends the 1986 prison prior should be stricken and his sentence reduced by one year because, "given the distinctions between Utah's and California's burglary statutes, there is no method by which respondent will be able to present evidence that the Utah burglary qualified as a California prison prior." To support this contention, defendant primarily relies on *Descamps v. United States* (2013) 570 U.S. ___ [133 S.Ct. 2276] (*Descamps*).[3]

There, the Supreme Court addressed the issue of whether sentencing courts may examine certain documents to determine whether a prior conviction for a crime with a single, indivisible set of elements qualifies as a "violent felony" under the enumerated-offenses clause of the Armed Career Criminal Act (ACCA) (18 U.S.C. § 924(e)). (*Descamps*, *supra*, ___ U.S. at p. ___ [133 S.Ct. at p. 2281].) The ACCA increases the sentences of certain federal defendants who have three prior convictions of such a felony, which includes "burglary, arson or extortion." (18 U.S.C. § 924(e).)

---

[3]  The Attorney General in its respondent's brief neither mentioned *Descamps* nor addressed defendant's contention that his 1986 Utah prison prior must be stricken. We thus requested the Attorney General to brief this issue and allowed defendant to respond. We have read and considered the supplemental briefs of the parties in connection with this issue.

The *Descamps* Court concluded that, in determining whether a prior conviction of the defendant (which by happenstance was based on § 459) qualified as a "serious felony" under the ACCA, the sentencing court could *not* refer to a plea colloquy to discover whether the defendant admitted the elements of generic burglary, which required the entry to be unlawful (i.e., breaking and entering), when section 459 had no such requirement and thus was categorically broader than "generic" burglary. (*Descamps*, *supra*, ___ U.S. at p. ___ [133 S.Ct. at pp. 2285-2286].)

We need not decide whether *Descamps* applies here; although *Descamps* concluded a court could consult a limited class of documents such as jury instructions to determine whether a conviction under a "divisible statute" (i.e., a statute that "sets out one or more elements of the offense in the alternative—for example, stating that burglary involves entry into a building *or* an automobile") matches an element in the generic offense (albeit for purposes of the ACCA) (*Descamps*, *supra*, ___ U.S. at p. ___ [133 S.Ct. at p. 2281]), we note from the record in this case there are no such documents that would allow such a limited inquiry, even if we determined the Utah statute at issue here was in fact "divisible" as the People contend.

Because defendant pleaded guilty in the Utah offense without specifying whether he formed the requisite intent to commit burglary before (i.e., as required in California) or after (i.e., as allowed in Utah) he entered the building, and because as noted the record in the instant case is devoid of the limited class of documents that would allow such an inquiry *and* the likelihood of the existence of such documents dating back 30 years is so slim given his guilty plea, we conclude defendant's 1986 Utah prison prior should be stricken and his sentence reduced accordingly.

DISPOSITION

The true finding on the 1986 Utah prison prior is reversed.  The trial court is directed to strike the 1986 Utah prison prior and reduce defendant's sentence accordingly. The trial court is further directed to prepare a new abstract of judgment reflecting these changes and to forward a certified copy of the new abstract to the Department of Corrections and Rehabilitation.  In all other respects, the judgment of conviction is affirmed.

BENKE, Acting P. J.

WE CONCUR:

NARES, J.

IRION, J.

9