MARTIN, Circuit Judge,
concurring in the judgment:
I agree with the result that Mr. Sea-brooks’s conviction and sentence are due to be affirmed. I therefore join Parts I and II of the Court’s opinion. However, I decline to join Part III of Judge Hull’s opinion. I believe it reaches legal issues beyond those necessary to decide this case. Yet because Judge Hull has written broadly about Mr. Seabrooks’s sentencing claims, I will set out my contrary view. No two judges on this panel have joined together in Judge Hull’s alternative ruling on Mr. Seabrooks’s sentencing claims. That means that this panel opinion stands only for the rule that our Circuit precedent in United States v. Lockley, 632 F.3d 1238 (11th Cir. 2011) requires Mr. Seabrooks’s 1997 Florida convictions for armed robbery to be counted in support of his 2015 Armed Career Criminal Act (“ACCA”) sentence. Neither my views nor those of Judge Hull create Circuit precedent beyond that.
I.
The ACCA caps a federal prison sentence at ten years, except when the person being sentenced has been convicted of three or more violent felonies or other serious crimes in the past. 18 U.S.C. § 924(a)(2). For Mr. Seabrooks, this means his 188-month sentence can stand only if his 1997 armed robbery convictions qualify as violent felonies within the meaning of the ACCA’s elements clause. 18 U.S.C. § 924(e)(2)(B)(i) (“As used in this subsection ... the term ‘violent felony means any crime punishable by imprisonment for a term exceeding one year ... that has as an element the use, attempted use, or threatened use of physical force against the person of another.”). So Mr. Sea-brooks’s challenge to his sentence requires us to evaluate whether each of his earlier convictions “has as an element the use, attempted use, or threatened use of physi *1347 cal force against the person of another.” Id.
We know we cannot look at the actual facts that led to Mr. Seabrooks’s armed robbery convictions when we conduct this evaluation. Descamps v. United States, — U.S. -, 133 S.Ct. 2276, 2283, 186 L.Ed.2d 438 (2013). Instead, Supreme Court precedent requires us to look at the elements of the statute of conviction to see whether, in the abstract, someone could have been convicted under that statute based on conduct that does not require the use, attempted use, or threatened use of physical force against the person of another. See Mathis v. United States, — U.S. -, 136 S.Ct. 2243, 2251, 195 L.Ed.2d 604 (2016). This is known as the categorical approach.
In applying the categorical approach here, we must examine whether Fla. Stat. § 812.13 required the use, attempted use, or threatened use of “violent force,” Curtis Johnson v. United States, 559 U.S. 133, 140, 130 S.Ct. 1265, 1271, 176 L.Ed.2d 1 (2010) (interpreting “physical force” in the elements clause), or a “substantial degree of force,” United States v. Owens, 672 F.3d 966, 971 (11th Cir. 2012) (holding that second-degree rape in Alabama doesn’t require “physical force” as defined by Curtis Johnson), when Mr. Seábrooks was 'convicted of violating that statute in 1997. If it didn’t—if acts involving lower levels of force could be the basis for an armed robbery conviction under the statute—then Mr. Seabrooks’s armed robbery convictions do not meet the definition of violent felonies under the elements clause.
In recent years, the Supreme Court has clarified the analytical steps that make up the categorical approach. First, we must “presume that the conviction rested upon nothing more than the least of the acts criminalized” by the state statute. Moncrieffe v. Holder, — U.S. -, 133 S.Ct. 1678, 1684, 185 L.Ed.2d 727 (2013) (alterations adopted and quotation omitted). This is often referred to as the “least culpable conduct.” See Donawa v. U.S. Att’y Gen., 735 F.3d 1275, 1283 (11th Cir. 2013) (citing Moncrieffe, 133 S.Ct. at 1685). To identify the least culpable conduct criminalized by the statute, we look to how state courts interpret the statute. See Curtis Johnson, 559 U.S. at 138, 130 S.Ct. at 1269-70 (“We are [] bound by the Florida Supreme Court’s interpretation of state law ... in determining whether a felony conviction for battery under Fla. Stat. § 784.03(2) meets the definition of ‘violent-felony’ in 18 U.S.C. § 924(e)(2)(B)(i).”); see also United States v. Rosales-Bruno, 676 F.3d 1017, 1021 (11th Cir. 2012) (“[W]e look to Florida case law to determine whether a conviction under § 787.02 necessarily involves the employment of ‘physical force’ as that term is defined by federal law.”). And as part of this step, we must analyze “the version of state law that the defendant was actually convicted of violating.” McNeill v. United States, 563 U.S. 816, 821, 131 S.Ct. 2218, 2222, 180 L.Ed.2d 35 (2011).
Second, after identifying the “least of the acts criminalized” by the state statute, we must then figure out whether the least of “those acts are encompassed by the generic federal offense.” Moncrieffe, 133 S.Ct. at 1684 (alteration adopted and quotation omitted). That means here we examine whether those acts involve the use, attempted use, or threatened use of violent force or a substantial degree of force. If they do, then the defendant’s earlier conviction under the state statute is categorically a violent felony under the ACCA’s elements clause, and it can be counted to support an enhanced ACCA sentence of at least fifteen years.
But if the “least of the acts criminalized” by the state statute do not involve the use, attempted use, or threatened use of violent *1348 force or a substantial degree of force, then we move on to a third step. The third step asks whether the statute was divisible, A statute is divisible when it has “multiple, alternative elements, and so effectively creates several different crimes.” Descamps, 133 S.Ct. at 2285 (alteration adopted and quotation omitted). “This means a jury must be required to find one of the alternative elements beyond a reasonable'doubt, rather than just convict under a statute that happens to list alternative definitions or alternative means for the same crime without requiring jurors to pick which one applies.” United States v. Lockett, 810 F.3d 1262, 1267 (11th Cir. 2016). If the state statute was divisible at the time the defendant was convicted of violating it, and if at least one but not all of the different crimes created by the statute count as violent felonies under the ACCA’s elements clause, then we must employ the “modified categorical approach.” Descamps, 133 S.Ct. at 2283 (quotation omitted). This approach allows us to look at certain documents from the state proceedings to see if the defendant’s conviction was for a crime that qualifies as a violent felony under the elements clause. Id. On the other hand, if the statute was not divisible (or as we say, indivisible), then that is the end of it. The defendant’s earlier conviction is not a violent felony under the ACCA’s elements clause, and it cannot be used to support a sentence of more than ten years.
II.
Judge Hull concludes that under United States v. Dowd, 451 F.3d 1244 (11th Cir. 2006), Mr. Seabrooks’s armed robbery convictions qualify as violent felonies under the ACCA’s elements clause.[1] But in light of the clarifications given to us by the Supreme Court about what steps we must take when applying the categorical approach, Dowd is no longer good law.
The Dowd opinion concluded “without difficulty” that Mr. Dowd’s 1974 Florida armed robbery conviction counted as a violent felony under the elements clause. Id. at 1255. But Dowd did not conduct the required categorical analysis. The entirety of Dowd’s reasoning occupies one sentence: “Dowd’s January 17, 1974, armed robbery conviction is undeniably a conviction for a violent felony [under the ACCA’s elements clause].” Id. Dowd’s reasoning was not sufficient to support its holding, much less this one too.
But even if Dowd’s reasoning was adequate under the categorical approach at the time it was published in 2006, the Supreme Court has since made it clear that we must do more. Judge Hull says that because Dowd did not look to the underlying facts of Mr. Dowd’s prior conviction, Dowd correctly applied the categorical approach. But the Supreme Court has since emphasized in Curtis Johnson, Moncrieffe, and Descamps that when applying the categorical approach, we must undertake the rigorous step-by-step analysis I’ve described here. Nowhere did the Dowd opinion: (1) consult state law to identify the least culpable conduct for which an armed robbery conviction could be sustained; (2) .analyze whether that least culpable conduct was, encompassed by the generic federal offense; or (3) discuss whether the Florida armed robbery statute was divisible. It only stated the conclusion (again, in one sentence) that a 1974 Florida armed robbery conviction counts as a violent felony.
*1349 The Supreme Court’s jurisprudence since Dowd clarifying how we must apply the categorical approach is “clearly on point” and “has undermined” Dowd’s con-clusory mode of analysis “to- the point of abrogation.” See U.S. v. Archer, 531 F.3d 1347, 1352 (11th Cir.2008) (quotation omitted) (concluding that Begay v. United States, 553 U.S. 137, 128 S.Ct. 1581, 170 L.Ed.2d 490 (2008), was clearly on point and abrogated United States v. Gilbert, 138 F.3d 1371 (11th Cir. 1998), because it “clearly set forth a new standard” to evaluate which crimes qualify as violent felonies under the ACCA, even though Begay addressed a different crime than Gilbert). After Curtis Johnson,[2] Moncrieffe, and Descamps, reliance on Dowd disregards the Supreme Court’s direction to us. Indeed, it elevates the one-sentence rationale in Dowd over recent Supreme Court precedent.
Judge , Hull says that several of our recent “cases” have also followed Dowd. I do not see this as an accurate report on the status of Dowd. She does not mention that these “cases” were orders issued on applications to file second or successive § 2255 motions. See In re Hires, 825 F.3d 1297 (11th Cir. 2016); In re Thomas, 823 F.3d 1345 (11th Cir. 2016); In re Moore, 830 F.3d 1268 (11th Cir. 2016). These rulings were made under a statutory directive that sets them apart from merits decisions that result from.the deliberative process, required of United States appellate courts.
When Courts of Appeals rule on applications from prisoners who want to file a second or successive habeas petition, the governing statute limits our role to merely deciding whether a prisoner has made a prima facie showing that his claim involves “a.new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.” 28 U.S.C. § 2255(h)(2).[3] And because the decision on whether to allow a second or successive motion is not a ruling on the merits of a prisoner’s habeas claims, the process by which we make these rulings falls well short of what one expects for decisions requiring prece-dential deference. These applications are almost always filed by prisoners with no lawyers. They include no briefs. In fact, the form used by prisoners for these applications forbids the prisoner from filing briefs or any attachments, unless the form is filed by a prisoner suffering under a *1350 death sentence. Application for Leave to File a Second or Successive Motion to Vacate, Set Aside or Correct Sentence, U.S. Ct. of Appeals Eleventh Circuit (last updated Jan. 2, 2001), http://www.call. uscourts.gov/sites/default/files/courtdocs/ clk/Form2255APP.pdf. The statute requires us to act on these applications within thirty days. 28 U.S.C. § 2244(b)(3)(D). Unlike our Court’s merits decisions, the statute strictly prohibits any review of our rulings on these applications. Id. § 2244(b)(3)(E). Our Court has even ruled that we can’t consider a prisoner’s application if , that prisoner has already made substántively the same claims in an earlier application. In re Baptiste, 828 F.3d 1337 (11th Cir. 2016). This makes it possible for a three-judge ruling (or even a two-judge ruling) on one of these applications to say things rejected by every other member of the court.
It is neither wise , nor just for this type of limited ruling, resulting from such a confined process, to bind every judge on this court as we consider fully counseled and briefed issues in making merits decisions that may result in people serving decades or lives in prison. The fact that some of this court’s limited rulings on these applications referenced Dowd should have no bearing on our merits decision here. Dowd has been abrogated and no longer binds us on the merits.
III.
While I reject Judge Hull’s reliance on Dowd, I agree that the outcome of this case is controlled- by United States v. Lockley, 632 F.3d 1238 (11th Cir. 2011).[4] Lockley considered whether a 2001 Florida attempted robbery conviction under § 812.13(1) counts as a “crime of violence” within the meaning of the identically-worded elements clause of the Sentencing Guidelines. See id. at 1240. To answer this question, the Lockley panel applied the categorical approach. First, it identified the least culpable conduct sufficient to support a robbery conviction to be taking by putting the victim in fear. Id at 1244. Next, the Lockley panel looked to Florida law and said that “putting in fear” involved acts that cause the victim to fear death or great bodily harm. Id. Finally, the panel found it “inconceivable” that any conduct causing this kind of fear wouldn’t involve the use or threatened use of physical force. Id. at 1245. Based on this analysis, Lockley said that Mr. Lockley’s attempted robbery conviction constitutes a violent crime as defined by the elements clause of the Sentencing Guidelines. Id. Thus, Lockley requires us to uphold Mr. Seabrooks’s sentence.
Mr. Seabrooks argues that Lockley does not govern his case because the robbery statute encompassed “sudden snatching” when he was convicted in 1997, in contrast to when Mr. Lockley was convicted in 2001. Mr. Seabrooks points to the enactment of Fla. Stat. § 812.131, a “robbery by sudden snatching” statute. Section 812.131 says that a person who takes property from a victim’s person with intent to deprive has committed “sudden snatching” even if he. didn’t “use[ ] any amount of force beyond that effort necessary” to take the. property, and even if the victim didn’t resist and was never injured. M|r. Sea-brooks argues that before Florida enacted § 812.131 in 1999, “sudden snatching” was *1351 enough to support a robbery conviction under § 812.13. He says this means “sudden snatching,” not “putting in fear,” was the least culpable conduct sufficient to support a robbery conviction under § 812.13 when he was convicted. And he continues that because Locldey used “putting in fear” as the least culpable conduct in its categorical analysis, it does not control our ruling in this case.
Mr. Seabrooks’s argument fails because at the time he was convicted .in August of 1997, the controlling Florida Supreme Court decision interpreting § 812.13 held that robbery requires the perpetrator to use “more than the force necessary to remove the property from the person”— that is, “physical force” that “overcomefs]” the “resistance [of] the victim.” Robinson v. State, 692 So.2d 883, 886 (Fla. 1997). Thus, “sudden snatching” as defined by § 812.131—that is, taking property without “us[ing] any amount of force beyond that effort necessary” to take the property and without any resistance from the victim—was not criminalized by § 812.13 after Robinson, when Mr. Seabrooks was convicted.
However, I do not agree with Judge Hull’s statement that the “force, violence, assault, or putting in fear” requirement in § 812.13, as interpreted by Florida courts, has not changed since the 1970s. This observation is not necessary to deciding Mr. Seabrooks’s case, and it goes too far in any event. In support of this statement, Judge Hull points to language in Robinson that suggests that § 812.13 had always required something more than sudden snatching.[5] This reasoning ignores the guidance given to us by the Supreme Court about how to conduct the categorical analysis. McNeill, 563 U.S. at 820, 131 S.Ct. at 2222 (“The -only way to answer this backward-looking question is to consult the law that applied at the time of that conviction.”); Before Robinson was decided, the controlling Florida Supreme Court decision interpreting § 812.13 held that a defendant who “exert[ed] physical force to extract [a handbag] from [the victim’s] grasp” had ’ committed robbery because “[a]ny degree of force suffices to convert larceny into a robbery.” McCloud v. State, 335 So.2d 257, 258-59 (Fla. 1976) (emphasis added). That means that people convicted under § 812.13 after McCloud in 1976 (but before Robinson in 1997) could have had their convictions sustained under the statute when they merely used “any degree of force.” The U.S. Supreme Court’s instruction to us in McNeill does not allow us to ignore this interpretation by the Florida Supreme Court.
Judge Hull says that I have applied McCloud out of context, but if I’ve done so, I’m in good company. The Florida Court of Appeals for the Fourth District—the district where Mr. Seabrooks was convicted— applied McCloud to hold that tearing a necklace from a victim’s neck involved “sufficient force, be it ever so little, to support robbery.” Santiago v. State, 497 So.2d 975, 976 (Fla. 4th DCA 1986) (emphasis added). So in the real world, people were being prosecuted and convicted under Florida’s robbery statute for using minimal force during the time that McCloud was the controlling precedent. The particular facts underlying McCloud can’t erase that reality.
*1352 Another problem with relying on Robinson for the proposition that § 812.13 has never included sudden snatching is that it’s plainly foreclosed by our decision in United States v. Welch, 683 F.3d 1304 (11th Cir. 2012). Again, the Supreme Court has told us to “turn[ ] to the version of state law that the defendant was actually convicted of violating” when applying the categorical approach. McNeill, 563 U.S. at 821, 131 S.Ct. at 2222. In looking to the version of § 812.13 under which Mr. Welch was convicted in 1996, the Welch panel acknowledged and even discussed Robinson, but it did not adopt Robinson’s contention that sudden snatching had never been sufficient to support a conviction under § 812.13. Rather, it identified sudden snatching as the least culpable conduct for which a person could be convicted under the statute, because Mr. Welch was convicted in 1996, before Robinson was decided. 683 F.3d at 1311. And 1996 was “a time when the controlling Florida Supreme Court authority held that ‘any degree of force’ would convert larceny into a robbery.” Id. (quoting McCloud, 335 So.2d at 258-59).
Judge Hull correctly observes that Welch analyzed Fla. Stat. § 812.13 under a different part' of the ACCA than we address today, but Welch’s mode of analysis still binds us. Just as we are called upon to do today, Welch analyzed a Florida robbery conviction under the categorical approach. In its categorical analysis, Welch looked to McCloud, but not to Robinson, to conclude that sudden snatching was the least culpable conduct for which a person could have been convicted under § 812.13 in 1996. Id. at 1310-14. This determination was necessary to Welch’s holding that the 1996 Florida robbery conviction was categorically a violent felony under the residual clause of the ACCA. Welch therefore binds us whenever we apply the categorical approach to analyze a Florida robbery conviction from a time before the Florida Supreme Court decided Robinson.
In any case, Judge Hull’s remark that the elements of § 812.13 have not changed since the 1970s is not necessary to our decision to affirm Mr. Seabrooks’s sentence. Mr. Seabrooks was convicted after the Florida Supreme Court decided Robinson, so his § 812.13 conviction required more than sudden snatching. As a result, we are bound by Lockley and must affirm Mr. Seabrooks’s enhanced sentence under the ACCA.
I analyze Mr. Seabrooks’s case in a different way than does Judge Hull, but I agree that his conviction and sentence must be affirmed.

. In her discussion of Dowd, Judge Hull writes for herself. Judge Baldock and I have not joined in Part IÍI.C of her opinion.

. I gather Judge Hull would confine the lesson from the Supreme Court .in Curtis Johnson to cases in which a defendant has a prior conviction for simple battery. This is not the way our court applies binding Supreme Court precedent. There are thousands of state criminal statutes that our court might need to evaluate in reviewing sentences imposed under the ACCA. The Supreme Court's caseload will not permit it to evaluate each of those statutes, and even if it did, we would be shirking our responsibility if we sat back and waited the years that it would take for-the Supreme Court to address every one of them. We must apply the broader principles given to us by the Court in cases like Curtis Johnson. And in fact, our court has applied the principles of Curtis Johnson outside of the simple battery context.' See, e.g., Rosales-Bruno, 676 F.3d at 1021-22 (applying Curtis Johnson to a Florida false imprisonment conviction); United States v. Romo-Villalobos, 674 F.3d 1246, 1248-49 (11th Cir. 2012) (applying Curtis Johnson to a Florida conviction for resisting a law enforcement officer); Owens, 672 F.3d at 971 (applying Curtis Johnson to an Alabama second-degree rape conviction).

. The statute also allows a prisoner to file a second or successive habeas petition if he has made a prima facie showing that his claim relies on "newly discovered evidence” that "would be sufficient to establish by clear and convincing evidence that no reasonable fact-finder would have found the movant guilty of the offense.” 28 U.S.C. § 2255(h)(1). Hires, Thomas, and Moore did not address new evidence claims. Mr. Seabrooks is before us on direct appeal.

. Judge Hull also mentions In re Robinson, 822 F.3d 1196 (11th Cir. 2016), which is an Order issued on Mr. Robinson’s application seeking to file a second or successive § 2255 motion. It was issued under the confined conditions I described above. Lockley (by itself) supports our ruling on Mr. Seabrooks’s sentence, and there is no need to invoke In re Robinson to that end.

. It's generally true that when a court interprets a statute it tells us what the statute has always meant. But here our interest is not about divining the true meaning of § 812.13. Rather, our interest is in understanding what conduct. could have resulted in Mr. Sea-broolts’s 1997 convictions under the statute, even if Florida courts were misinterpreting the statute at that time.