16-4129-cr
*United States v. Castillo*

# In the
# United States Court of Appeals
## for the Second Circuit

AUGUST TERM 2017

No. 16-4129-cr

UNITED STATES OF AMERICA,
*Appellant*,

v.

JUAN CASTILLO,
*Defendant-Appellee*.

On Appeal from the United States District Court
for the Southern District of New York

SUBMITTED: MARCH 5, 2018
DECIDED: JUNE 4, 2018

Before: CABRANES, RAGGI, *Circuit Judges*, and VILARDO, *District Judge.**

———————

The government appeals from an October 6, 2016 judgment of the United States District Court for the Southern District of New York (Gregory H. Woods, *Judge*) convicting defendant-appellee Juan Castillo, following his plea of guilty, of being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1), and sentencing him principally to nineteen months' imprisonment to be followed by three years of supervised release. On appeal, the government argues that the District Court erred when it found that Castillo's prior New York conviction for manslaughter in the first degree, in violation of New York Penal Law Section 125.20(1), did not qualify as a "crime of violence" for enhancement purposes under the enumerated offenses in Application Note 1 of the commentary to Section 4B1.2 of the November 1, 2015 edition of the United States Sentencing Guidelines.

This case presents four questions:

(1) Whether the government waived any arguments based on the former "residual clause" of Guidelines Section

———————

* Judge Lawrence J. Vilardo, of the United States District Court for the Western District of New York, sitting by designation.

4B1.2(a)(2) when, before the District Court, it conceded that the clause was void for vagueness;

(2) What the so-called "generic definition" of "manslaughter" is;

(3) Whether the elements of manslaughter in the first degree under New York law, N.Y. Penal Law § 125.20(1), are the same as, or narrower than, those of the generic offense of "manslaughter"; and

(4) Whether the District Court erred in calculating the applicable advisory range under the United States Sentencing Guidelines when it found that manslaughter in the first degree under New York law, N.Y. Penal Law § 125.20(1), does not qualify as a "crime of violence" under Application Note 1 of the commentary to Section 4B1.2 of the November 1, 2015 edition of the United States Sentencing Guidelines.

We conclude:

(1) The government did not waive arguments based on the former "residual clause" of Guidelines Section 4B1.2(a)(2);

(2) The generic definition of "manslaughter" includes the unlawful killing of another human being recklessly;

3

(3) Manslaughter in the first degree under New York law, N.Y. Penal Law § 125.20(1), is narrower than the generic definition of "manslaughter"; and

(4) The District Court erred when it found that Castillo's prior conviction for manslaughter in the first degree under New York law, N.Y. Penal Law § 125.20(1), did not qualify as a "crime of violence" under Application Note 1 of the commentary to Section 4B1.2 of the November 1, 2015 edition of the United States Sentencing Guidelines.

Accordingly, we set aside the District Court's sentence of Castillo and **REMAND** the cause to the District Court for resentencing.

————

Sagar K. Ravi, Assistant United States Attorney (Margaret Garnett, Sarah K. Eddy, Assistant United States Attorneys, *on the brief*), *for* Joon H. Kim, Acting United States Attorney for the Southern District of the United States, *for Appellant*.

Barry D. Leiwant, Federal Defenders of New York, Inc., *for Defendant-Appellee*.

Nikki Kowalski, Deputy Solicitor General for Criminal Matters, *for* Barbara D.

4

Underwood, Acting Attorney General for the State of New York, *as Amicus Curiae*.

———————

JOSÉ A. CABRANES, *Circuit Judge*:

The government appeals from an October 6, 2016 judgment of the United States District Court for the Southern District of New York (Gregory H. Woods, *Judge*) convicting defendant-appellee Juan Castillo, following his plea of guilty, of being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1), and sentencing him principally to 19 months' imprisonment to be followed by three years of supervised release. On appeal, the government argues that the District Court erred when it found that Castillo's prior New York conviction for manslaughter in the first degree, in violation of New York Penal Law Section 125.20(1), did not qualify as a "crime of violence" for enhancement purposes under the enumerated offenses in Application Note 1 of the commentary to Section 4B1.2 of the November 1, 2015 edition of the United States Sentencing Guidelines ("Sentencing Guidelines," "U.S.S.G.," or simply "Guidelines").

This case presents four questions:

(1) Whether the government waived any arguments based on the former "residual clause" of Guidelines Section 4B1.2(a)(2) when, before the District Court, it conceded that the clause was void for vagueness;

5

(2) What the so-called "generic definition" of "manslaughter" is;

(3) Whether the elements of manslaughter in the first degree under New York law, N.Y. Penal Law § 125.20(1), are the same as, or narrower than, those of the generic offense of "manslaughter"; and

(4) Whether the District Court erred in calculating the applicable advisory range under the United States Sentencing Guidelines when it found that manslaughter in the first degree under New York law, N.Y. Penal Law § 125.20(1), does not qualify as a "crime of violence" under Application Note 1 of the commentary to Section 4B1.2 of the November 1, 2015 edition of the Guidelines.

We conclude:

(1) The government did not waive arguments based on the former "residual clause" of Guidelines Section 4B1.2(a)(2);

(2) The generic definition of "manslaughter" includes the unlawful killing of another human being recklessly;

(3) Manslaughter in the first degree under New York law, N.Y. Penal Law § 125.20(1), is narrower than the generic definition of "manslaughter"; and

(4) The District Court erred when it found that Castillo's prior conviction for manslaughter in the first degree under New

6

York law, N.Y. Penal Law § 125.20(1), did not qualify as a "crime of violence" under Application Note 1 of the commentary to Section 4B1.2 of the November 1, 2015 edition of the Sentencing Guidelines.

Accordingly, we set aside the District Court's sentence of Castillo and **REMAND** the cause to the District Court for resentencing.

## I.    BACKGROUND

### A.

On or about May 11, 2003, defendant-appellee Juan Castillo shot and killed a man in Bronx County, New York. Castillo was indicted for the shooting and charged in six counts, including one count for manslaughter in the first degree, a felony, in violation of New York Penal Law Section 125.20(1).[1]

On February 2, 2006, Castillo was convicted in New York State Supreme Court, Bronx County, of manslaughter in the first degree ("2006 Manslaughter Conviction"). Before the District Court, the parties here agreed that this conviction was "under subsection 1 of

---

[1] New York Penal Law Section 125.20(1) provides: "A person is guilty of manslaughter in the first degree when . . . [w]ith intent to cause serious physical injury to another person, he causes the death of such person or of a third person."

New York Penal Law 125.20."[2] Castillo subsequently served his sentence.

## B.

On November 11, 2015, Castillo was arrested in the Bronx after he threw a bag containing a loaded .22 caliber revolver out of an apartment window. On March 30, 2016, the government filed an indictment in the Southern District of New York charging Castillo with being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1).[3] The parties did not reach a plea agreement, and Castillo pleaded guilty to the sole count in the indictment on June 6, 2016.

## C.

At sentencing, the government and Castillo disputed the applicable advisory range under the Sentencing Guidelines. As relevant here, the parties disagreed on two issues: (1) whether to

---

[2] App'x at 56.

[3] 18 U.S.C. § 922(g)(1) provides:

(g)     It shall be unlawful for any person--

>   (1)     who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . .
>
>   to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

apply the August 1, 2016 edition of the Sentencing Guidelines ("August 2016 Guidelines"), or the November 1, 2015 edition ("November 2015 Guidelines"); and (2) whether Castillo's 2006 Manslaughter Conviction was a "crime of violence" resulting in a "career offender" enhancement under either or both editions of the Guidelines.

These issues are interrelated because of constitutional considerations resting on the Ex Post Facto Clause.[4] A sentencing court typically applies the Guidelines Manual in place *at the time of sentencing*, which here is the August 2016 Guidelines.[5] There is, however, "an *ex post facto* violation when a defendant is sentenced under Guidelines promulgated after he committed his criminal acts and the new version provides a higher applicable Guidelines sentencing range than the version in place *at the time of the offense*,"[6] which here is the November 2015 Guidelines. Consequently, the sentencing court was required to calculate the advisory range under both editions of the Guidelines—and in so doing consider whether Castillo's 2006 Manslaughter Conviction was a "crime of violence" under each edition—in order to determine which edition to apply.

---

[4] "No Bill of Attainder or ex post facto Law shall be passed." U.S. CONST. art. I, § 9, cl. 3.

[5] 18 U.S.C. § 3553(a)(4)(A)(ii) ("The court, in determining the particular sentence to be imposed, shall consider . . . the guidelines . . . [that] are in effect on the date the defendant is sentenced . . . .").

[6] *Peugh*, 569 U.S. at 533 (emphasis added).

### 1. *Castillo's position at sentencing*

Castillo took the position that the District Court should apply the November 2015 Guidelines. He argued that those Guidelines produced a lower advisory range than the August 2016 Guidelines because, under the November 2015 Guidelines, his 2006 Manslaughter Conviction did not constitute a "crime of violence."

Castillo acknowledged that his prior conviction for manslaughter in the first degree under New York law would have qualified as a "crime of violence" under the "residual clause" of Section 4B1.2(a)(2) of the Guidelines.[7] But Castillo contended—and the government conceded—that because the Supreme Court decided in *Johnson v. United States*[8] that the "residual clause" of the Armed

---

[7] Section 4B1.2(a) of the November 2015 Guidelines provided:

(a)  The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—

   (1)  has as an element the use, attempted use, or threatened use of physical force against the person of another, or

   (2)  is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

The "residual clause" is in subsection (a)(2): "or otherwise involves conduct that presents a serious potential risk of physical injury to another." The Sentencing Commission removed the "residual clause" in the August 2016 Guidelines.

[8] 135 S. Ct. 2551 (2015).

Career Criminal Act ("ACCA") was unconstitutional, the identically worded provision in the Guidelines was likewise unconstitutional.[9] That meant Castillo's 2006 Manslaughter Conviction could constitute a "crime of violence" only if it qualified as such under some other provision in Section 4B1.2. The problem for the government, according to Castillo, was that no other provision covered his prior offense.

Castillo observed that, because the government had conceded that the "residual clause" was void for vagueness, the government could only rely on two other Guidelines provisions to argue that manslaughter in the first degree under New York law was a "crime of violence" under Section 4B1.2: (1) the "force clause"[10] and (2) the

---

[9] In *Johnson*, the Supreme Court held that the "residual clause" in ACCA's definition of "violent felony" was void for vagueness. 135 S. Ct. at 2563. Because the "residual clause" in U.S.S.G. § 4B1.2(a)(2) was identical to the "residual clause" in ACCA, following *Johnson* the Department of Justice took the position that the Guidelines' "residual clause" was likewise void for vagueness. That position turned out to be mistaken. In March 2017, the Supreme Court decided *Beckles v. United States*, 137 S. Ct. 886 (2017), which held that the "residual clause" *as used in the Guidelines* is not void for vagueness.

According to the Supreme Court, "the Guidelines are not subject to a vagueness challenge under the Due Process Clause" because, unlike ACCA, they "do not fix the permissible range of sentences." *Id.* at 892. Instead, the advisory Guidelines "merely guide the exercise of a court's discretion in choosing an appropriate sentence within the statutory range." *Id.*

[10] The "force clause" in Guidelines Section 4B1.2(a)(1) defines a "crime of violence" as an offense that "has as an element the use, attempted use, or threatened use of physical force against the person of another[.]"

11

enumerated offenses in Application Note 1 of the commentary.[11] Neither, Castillo said, applied to his prior offense. He argued that the government could not rely on the "force clause" because manslaughter in the first degree under New York law could be committed by omission, and thus did not necessarily require the use of force. And the government could not rely on Application Note 1's enumeration of "manslaughter," according to Castillo, because that provision was merely an interpretation of the section's "residual clause," which the parties agreed was void.

Because there could be no enhancement for a prior "crime of violence," Castillo argued, the applicable November 2015 advisory Guidelines range for his instant offense was 15 to 21 months' imprisonment. Castillo requested a below-Guidelines sentence of one-year and one-day imprisonment, to be followed by supervised release.

### 2. *The government's position at sentencing*

The government responded that Castillo's 2006 Manslaughter Conviction was a "crime of violence" under both the November 2015 and August 2016 Guidelines. It then calculated an advisory range of 30 to 37 months' imprisonment under the August 2016 Guidelines,

---

[11] As relevant here, Application Note 1 provided: "'Crime of violence' includes murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling."

and recommended that the District Court impose a sentence within the Guidelines range.

In arguing that Castillo's prior conviction was a "crime of violence" under the November 2015 Guidelines, the government expressly disclaimed reliance on the "residual clause" of Section 4B1.2(a)(2). It instead focused on the "force clause" and the enumerated offenses in Application Note 1.[12]

Manslaughter in the first degree under New York law qualified as a "crime of violence" under the "force clause," the government contended, because the offense necessarily involves knowingly or intentionally causing bodily harm. The government also argued that the offense was a "crime of violence" under Application Note 1, because Application Note 1 had independent force and enumerated "manslaughter" as a "crime of violence."

3. *The District Court's sentencing*

The District Court sentenced Castillo on October 6, 2016. In an oral ruling, the District Court largely adopted Castillo's arguments, and concluded that his 2006 Manslaughter Conviction was not a "crime of violence" under the November 2015 Guidelines. Applying those earlier Guidelines, the District Court arrived at an advisory range of 15 to 21 months' imprisonment. The District Court sentenced

---

[12] The government also argued that it would be absurd for a statute that simply criminalized any use of physical force to be a "crime of violence," but not first-degree manslaughter. App'x at 19–20. The government, however, does not renew that argument on appeal.

Castillo principally to 19 months' imprisonment to be followed by three years of supervised release.

The District Court entered judgment on October 6, 2016.

## D.

On December 7, 2016, the government, with the authorization of the Solicitor General of the United States, filed a timely notice of appeal.[13]

After the case was submitted, we ordered additional briefing to address the following question: What analysis does a court apply when distilling the "generic definition" of an offense enumerated in the Sentencing Guidelines where the United States Code, State codes, State court decisions, and the Model Penal Code contain multiple and differing definitions of an offense? We also invited the New York State Attorney General to submit an amicus brief addressing the question. We are grateful to the New York Solicitor General (now Acting Attorney General), Barbara D. Underwood, for accepting the invitation.

During the pendency of this appeal, Castillo completed his sentence of imprisonment and is currently on supervised release.[14]

---

[13] The government requested, and the District Court granted, a 30-day extension to file the notice of appeal.

[14] We have an "independent obligation to ensure that developments in the case have not rendered the appeal moot." *United States v. Williams*, 475 F.3d 468,

## II.    DISCUSSION

The principal question on appeal is whether manslaughter in the first degree under New York law, N.Y. Penal Law § 125.20(1), qualifies as a "crime of violence" under the enumerated offenses in Application Note 1 of the commentary to Section 4B1.2 of the November 2015 Guidelines.[15] We hold that it does. We therefore set aside Castillo's sentence because of the procedural error in

---

479 (2d Cir. 2007). Although Castillo has been released from prison, a live case-and-controversy continues to exist because a ruling in the government's favor could result in Castillo returning to prison. *See United States v. Suleiman*, 208 F.3d 32, 37 (2d Cir. 2000) (holding that although the "defendant's completion of his prison term and his subsequent deportation mooted *his* appeal of the sentence, . . . [it did] not necessarily preclude the *Government's* appeal," since the defendant could still be rearrested and imprisoned for the crimes if he reentered the country (emphases in original) (citation omitted)).

[15] The government additionally suggests in passing that the District Court erred when it concluded that manslaughter in the first degree under New York law did not qualify as a "crime of violence" under the "force clause" of Section 4B1.2(a)(1). Because the government offers no arguments on this issue, we deem it waived in this case. *See United States v. Botti*, 711 F.3d 299, 313 (2d Cir. 2013) ("It is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (internal quotation marks omitted)).

miscalculating the advisory Guidelines range, and we remand the cause for resentencing.

## A. Standard of Review

"We review a sentence for procedural and substantive reasonableness under a 'deferential abuse-of-discretion standard.'"[16] "The procedural inquiry focuses primarily on the sentencing court's compliance with its statutory obligation to consider the factors detailed in 18 U.S.C. § 3553(a), while the substantive inquiry assesses the length of the sentence imposed in light of the § 3553(a) factors."[17] A district court also commits procedural error when it "makes a mistake in the Guidelines calculation."[18] We review questions of law *de novo*, and questions of fact for clear error.[19]

## B. Whether the Government Waived Reliance on the "Residual Clause"

As a preliminary matter, Castillo contends that this Court cannot consider whether his 2006 Manslaughter Conviction falls

---

[16] *United States v. Thavaraja*, 740 F.3d 253, 258 (2d Cir. 2014) (quoting *Gall v. United States*, 552 U.S. 38, 41 (2007)).

[17] *United States v. Verkhoglyad*, 516 F.3d 122, 127 (2d Cir. 2008) (internal quotation marks, citations, and alterations omitted).

[18] *United States v. Cavera*, 550 F.3d 180, 190 (2d Cir. 2008) (en banc).

[19] *United States v. Legros*, 529 F.3d 470, 474 (2d Cir. 2008).

within the defunct "residual clause"[20] of Guidelines Section 4B1.2(a)(2) because the government waived any such argument when, before the District Court, it conceded that the clause was void for vagueness.[21] We disagree.[22]

Whether Section 4B1.2(a)(2)'s "residual clause" was unconstitutionally vague is a question of law. And after the government filed its notice of appeal, that question was definitively answered by the Supreme Court in *Beckles v. United States*, where it held that the "residual clause" is not unconstitutionally vague because "the advisory Guidelines are not subject to vagueness

---

[20] *See* note 7, *ante*.

[21] Appellee Br. at 8–13; *see United States v. Spruill*, 808 F.3d 585, 596 (2d Cir. 2015) (recognizing that a court has discretion to consider "errors that were *forfeited* because not timely raised in the district court, but no such discretion applies whether there has been true *waiver* (emphases in original)).

[22] Castillo does not draw out the implications of his position, but they are clear. Based in part on the government's concession, the District Court found that the enumeration of "manslaughter" in the commentary to Section 4B1.2 was void. App'x at 79–81. The District Court reasoned that the commentary's enumeration of "manslaughter" was an interpretation of the "residual clause," and interpretations do "not have independent legislative force." *Id.* at 81. Since the "residual clause" was conceded to be void, the District Court determined that the enumeration of "manslaughter" in the commentary was likewise void. *Id.* at 79–81.

Because we conclude that we are not barred from considering the application of the "residual clause" to Castillo's 2006 Manslaughter Conviction, we do not address whether the commentary's enumeration of "manslaughter" has independent legislative force.

17

challenges under the Due Process Clause."[23] Accordingly, we now know that the government mistakenly conceded that the clause was invalid.

Castillo argues that the government's earlier concession constitutes waiver, thereby precluding us from considering any arguments based on the "residual clause."[24] Not so. It is well-established that a court "cannot properly determine a question of law on the basis of a party's concession,"[25] even a concession by the government.[26] Indeed, a court "retains the independent power to identify and apply the proper construction of governing law."[27] Post-*Beckles*, the government is therefore permitted to press[28]—and we are free to consider—arguments based on the legal conclusion of the

[23] *Beckles v. United States*, 137 S. Ct. 886, 890 (2017).

[24] Appellee Br. at 9.

[25] *Snider v. Melindez*, 199 F.3d 108, 114 (2d Cir. 1999); *see also Nat'l Aeronautics & Space Admin. v. Nelson*, 562 U.S. 134, 163 n.* (2011) (Scalia and Thomas, *JJ.*, concurring) ("We are not bound by a litigant's concession on an issue of law."); *United States v. Ball*, 870 F.3d 1, 4 (1st Cir. 2017) ("[A]n appellate court is not necessarily constrained by a concession by either party in a criminal case as to a legal conclusion." (internal quotation marks and alteration omitted)).

[26] *See, e.g.*, *United States v. Smith*, 621 F.2d 483, 489 n.3 (2d Cir. 1980) ("[A] concession by the Government on a question of law is never binding on this Court. Thus the Government is free to argue the question . . . even if it 'conceded' it during the proceedings below." (citation omitted)); *United States v. Tortorello*, 533 F.2d 809, 812 (2d Cir. 1976) ("A concession by the Government on a question of law is not binding on the court.").

[27] *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991).

[28] *Smith*, 621 F.2d at 489 n.3.

Supreme Court that the "residual clause" of the Guidelines is not void for vagueness.

## C. The "Modified Categorical Approach"

The waiver issue resolved, we proceed to the central question on appeal: Whether manslaughter in the first degree under New York law, N.Y. Penal Law § 125.20(1), qualifies as a "crime of violence" under the enumerated offenses in Application Note 1 of the commentary to Section 4B1.2 of the November 2015 Guidelines. To resolve this question, we apply what is known as the "modified categorical approach."

"Where the basis for categorizing a prior conviction as a crime of violence is that the offense is specifically enumerated as such in the Career Offender Guideline or its commentary, we undertake the categorical approach," or its modified counterpart, "by comparing the state statute to the generic definition of the offense."[29] In applying the categorical approach, we "look only to the statutory definitions— *i.e.*, the elements—of a defendant's prior offenses, and *not* to the particular facts underlying those convictions."[30] "[O]nly if the statute's elements are the same as, or narrower than, those of the

---

[29] *United States v. Jones*, 878 F.3d 10, 18 (2d Cir. 2017).

[30] *Descamps v. United States*, 570 U.S. 254, 261 (2013) (emphasis in original) (internal quotation marks omitted); *see also United States v. Genao*, 869 F.3d 136, 144 (2d Cir. 2017) (same).

generic offense" does the prior conviction serve as a predicate offense for a sentencing enhancement.[31]

Where, as here, "a state statute . . . criminalize[s] multiple acts in the alternative," we employ the "modified categorical approach."[32] Under the "modified categorical approach," we are required to "look[ ] to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of."[33] We then "compare that crime, as the categorical approach commands, with the relevant generic offense."[34]

The parties agreed before the District Court that Castillo was convicted of manslaughter in the first degree under New York Penal Law Section 125.20(1).[35] Accordingly, our inquiry under the "modified categorical approach" is whether the elements of New York Penal Law Section 125.20(1) are the same as, or narrower than, the generic definition of "manslaughter."

---

[31] *Descamps*, 570 U.S. at 257.

[32] *Jones*, 878 F.3d at 16.

[33] *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016); *see also Shepard v. United States*, 544 U.S. 13, 26 (2005).

[34] *Mathis*, 136 S. Ct. at 2249.

[35] *See* note 2 and accompanying text, *ante*.

**D. Definition of the Generic Offense of "Manslaughter"**

Our first task is to define the generic crime of "manslaughter."[36] The Supreme Court instructs us that the generic definition of an offense is the "contemporary understanding" of the term.[37] In many instances, the generic definition will be the "sense in which the term is now used in the criminal codes of most States."[38] But courts also consult other sources, including federal criminal statutes,[39] the Model Penal Code,[40] scholarly treatises,[41] and legal dictionaries.[42] In addition, the common law can help to frame the analysis,[43] although

---

[36] Castillo argues that we should interpret "manslaughter" in Application Note 1 to refer only to "voluntary manslaughter." Appellee Br. at 15. Although the Sentencing Commission revised Section 4B1.2(a)(2) in August 2016 to specify "voluntary manslaughter," the November 2015 Guidelines refer simply to "manslaughter." Following the plain text of the November 2015 Guidelines, we hold that the term "manslaughter" in the November 2015 Guidelines encompasses both voluntary and involuntary manslaughter. *See also United States v. Aponte*, 235 F.3d 802, 803 (2d Cir. 2000) (suggesting that the Guidelines enumeration of "manslaughter" includes involuntary manslaughter).

[37] *Taylor v. United States*, 495 U.S. 575, 593 (1990).

[38] *Id.* at 598; *see also Jones*, 878 F.3d at 18–19.

[39] *United States v. Walker*, 595 F.3d 441, 446 (2d Cir. 2010).

[40] *Taylor*, 495 U.S. at 598 n.8; *see also Walker*, 595 F.3d at 446.

[41] *Taylor*, 495 U.S. at 598–99.

[42] *Esquivel-Quintana v. Sessions*, 137 S. Ct. 1562, 1569 (2017).

[43] *See Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 189–90 (2007).

we do not apply the presumption that an undefined statutory term takes its common-law meaning.[44]

### 1. *Murder and manslaughter at common law*

Historically, murder and manslaughter together covered the field of criminal homicide: murder was the unlawful killing of a human being with "malice aforethought,"[45] and manslaughter was the unlawful killing of a human being "without malice aforethought."[46] Over time, the term "malice aforethought" came to encompass a variety of mental states, including intent to kill in the absence of extenuating circumstances, intent to do serious bodily injury, "depraved heart," and intent to commit a felony.[47] One who unlawfully killed another human being with one of those mental states thereby committed common law murder.

In contrast, common law manslaughter—or the unlawful killing without malice aforethought—served as "a sort of catch-all category . . . [for] homicides which are not bad enough to be murder but which are too bad to be no crime whatever."[48] Manslaughter was

---

[44] *Taylor*, 495 U.S. at 592–96.

[45] 2 WAYNE R. LAFAVE, SUBSTANTIVE CRIMINAL LAW § 14.1, at 566 (3d ed. 2017).

[46] *Id.* at § 15.1, at 668.

[47] *Id.* at § 14.1, at 566.

[48] *Id.* at § 15.1, at 668.

later subdivided into voluntary and involuntary varieties.[49] Voluntary manslaughter was the intentional killing "in a heat of passion upon adequate provocation," and involuntary manslaughter was an unintentional killing caused by "criminal negligence" or "recklessness," or during the commission of an unlawful act not amounting to a felony.[50] One could also be liable for manslaughter if one recklessly omitted to act when one had a duty to do so.[51]

### 2. Contemporary manslaughter

Although the federal criminal code[52] and many state criminal codes[53] preserve the historical distinction between voluntary and involuntary manslaughter, "the modern trend, reflected in a majority of recent recodifications, is for there to be but one single manslaughter crime."[54] Yet even among those states that follow the "modern trend," there are significant differences in how they define the offense.

For example, Alabama defines "manslaughter" as causing the death of another person recklessly or in a sudden heat of passion.[55]

---

[49] *Id.* at § 15.4, at 708.

[50] *Id.* at § 15.4, at 708–09; *id.* at § 15.4(a), at 709–11.

[51] *Id.* at § 15.4(b), at 716–17.

[52] 18 U.S.C. § 1112(a).

[53] LaFave at § 15.1, at 668.

[54] *Id.* at § 15.1, at 668–69.

[55] Ala. Code § 13A-6-3.

23

Other state manslaughter statutes include the states of mind found in the Alabama code, but enumerate additional states of mind that satisfy the *mens rea* element of manslaughter.[56] Still others recognize "extreme emotional disturbance," but do not recognize "heat of passion," as a *mens rea* of "manslaughter,"[57] and others still define "manslaughter" simply as "recklessly caus[ing] the death of another human being."[58]

The diversity of state definitions of "manslaughter" creates an obvious obstacle to identifying the generic definition of the offense. But that obstacle is not insurmountable. By surveying the state and federal manslaughter statutes, and consulting the Model Penal Code,[59] we can distill a generic definition by identifying precisely which elements are present "in a majority of the . . . criminal codes."[60]

We are thus able to hold that the generic definition of "manslaughter" includes the unlawful killing of another human being recklessly. We arrive at this definition because the federal

---

[56] *E.g.*, Alaska Stat. § 11.41.120; N.J. Stat. § 2C:11-4.

[57] *E.g.*, Del. Code tit. 11, § 632; N.H. Rev. Stat. § 630:2.

[58] N.D. Cent. Code § 12.1-16-02; *see also* Tex. Penal Code § 19.04.

[59] We respectfully decline to adopt the Fourth Circuit's position that "the Model Penal Code provides the best generic, contemporary, and modern definition" of an offense. *See United States v. Peterson*, 629 F.3d 432, 436 (4th Cir. 2011). Although the Model Penal Code can help to distill the generic definition of an offense, it is not by itself dispositive.

[60] *Taylor v. United States*, 495 U.S. 575, 589 (1990).

code,[61] most state codes,[62] and the Model Penal Code[63] provide that recklessness—or a comparable or less culpable state of mind—satisfies the *mens rea* element of "manslaughter."

The *mens rea* of recklessness, of course, serves as a proverbial floor for the generic definition of "manslaughter." More culpable states of mind, such as "knowingly" and "recklessly under circumstances manifesting extreme indifference to the value of human life," also satisfy the generic definition. So too do the states of mind that historically fell under the category of "malice

---

[61] 18 U.S.C. § 1112(a) ("without due caution and circumspection").

[62] *See, e.g.,* Ala. Code § 13A-6-3(a)(1) ("recklessly"); Alaska Stat. § 11.41.120(a)(1) ("recklessly"); Ariz. Rev. Stat. § 13-1103(A)(1) ("Recklessly"); Ark. Code § 5-10-104(a)(3) ("recklessly"); Cal. Penal Code § 192(b) ("without due caution and circumspection"); Colo. Rev. Stat. § 18-3-104(1)(a) ("recklessly"); Conn. Gen. Stat. § 53a-56(a)(1) ("recklessly"); Del. Code tit. 11, § 632(1) ("recklessly"); Haw. Rev. Stat. § 707-702(1)(a) ("recklessly"); Idaho Code § 18-4006(2) ("without due caution and circumspection"); Kan. Stat. § 21-5405(a)(1) ("Recklessly"); Me. Rev. Stat. tit. 17-A, § 203(1)(A) ("Recklessly, or with criminal negligence"); Miss. Code § 97-3-47 ("culpable negligence"); Mo. Stat. § 565.024(1) ("recklessly"); Nev. Rev. Stat. § 200.040(2) ("without due caution or circumspection"); N.H. Rev. Stat. § 630:2(I)(b) ("Recklessly"); N.J. Stat. § 2C:11-4(b)(1) ("recklessly"); N.M. Stat. § 30-2-3(B) ("without due caution and circumspection"); N.Y. Penal Law § 125.15(1) ("recklessly"); N.D. Cent. Code § 12.1-16-02 ("recklessly"); Okla. Stat. tit. 21, § 716 ("culpable negligence"); Or. Rev. Stat. § 163.125(1)(a) ("recklessly"); S.C. Code § 16-3-60 ("criminal negligence"); S.D. Codified Laws § 22-16-20 ("reckless killing"); Tex. Penal Code § 19.04(a) ("recklessly"); Utah Code § 76-5-205(2)(a) ("recklessly"); Wash. Rev. Code § 9A.32.060(1)(a) ("recklessly"); Wyo. Stat. § 6-2-105(a)(ii) ("recklessly").

[63] Model Penal Code § 210.3(1)(a) ("recklessly").

aforethought" associated with murder: intent to kill in the absence of extenuating circumstances, intent to do serious bodily injury, "depraved heart," and intent to commit a felony.[64]

In holding that generic manslaughter includes a *mens rea* of recklessness, we join the Fourth, Fifth, Eighth, and Ninth Circuits.[65] At the same time, we disagree with the Tenth Circuit, which has held "that only those versions of manslaughter that involve intentional or purposeful behavior qualify as crimes of violence for purposes of § 4B1.2(a)."[66]

---

[64] *See* note 47 and accompanying text, *ante*. We do not reach the question of whether the generic definition of "manslaughter" includes intentional killings committed under extenuating circumstances, such as under the "heat of passion" or under the influence of an "extreme emotional disturbance."

We note that most jurisdictions have *either* a "heat of passion" *or* an "extreme emotional disturbance" provision in their manslaughter statutes. Because there are—at least conceptually—elements common to both these mental states, and because most jurisdictions incorporate one or the other in their definitions of "manslaughter," the generic definition inquiry therefore is: What conduct is covered by *both* "heat of passion" *and* "extreme emotional disturbance"?

[65] *See, e.g.*, *United States v. Rivera-Muniz*, 854 F.3d 1047, 1051 (9th Cir. 2017) (concluding that "recklessness is an element of manslaughter" (internal quotation marks omitted)); *United States v. Kosmes*, 792 F.3d 973, 977 (8th Cir. 2015) (adopting Model Penal Code definition, which includes a *mens rea* of recklessness); *United States v. Peterson*, 629 F.3d 432, 436–37 (4th Cir. 2011) (same); *United States v. Dominguez-Ochoa*, 386 F.3d 639, 646 (5th Cir. 2004) ("[W]e hold that generic, contemporary manslaughter (including involuntary manslaughter) requires a recklessness *mens rea*.").

[66] *United States v. Armijo*, 651 F.3d 1226, 1237 (10th Cir. 2011).

In sum, we hold that the generic definition of "manslaughter" includes the unlawful killing of another human being recklessly, or with a more culpable state of mind such as knowingly or with intent to cause serious bodily injury.

### E. Application of "Modified Categorical Approach" to Manslaughter in the First Degree under New York Law

Under the "modified categorical approach," we next compare the elements of Castillo's 2006 Manslaughter Conviction with the generic definition.

Castillo was convicted of manslaughter in the first degree under New York Penal Law Section 125.20(1).[67] This prior conviction will qualify as a "crime of violence" only if the elements of the offense "are the same as, or narrower than, those of the generic offense"[68] of "manslaughter."

New York Penal Law Section 125.20(1) provides: "A person is guilty of manslaughter in the first degree when . . . [w]ith intent to cause serious physical injury to another person, he causes the death of such person or of a third person." The *mens rea* here is intent to cause serious physical injury. The generic definition of "manslaughter," however, has a different *mens rea*: recklessness. Because the *mens rea* elements of the two offenses are not "the same,"

---

[67] *See* note 2 and accompanying text, *ante*.

[68] *Descamps v. United States*, 570 U.S. 254, 257 (2013).

we must determine whether the elements of the New York offense are "narrower than[ ] those of the generic offense."[69]

We conclude that the elements of manslaughter in the first degree under New York Penal Law Section 125.20(1) are narrower than those of the generic offense.[70] New York criminal law divides culpable mental states "along but a single spectrum of culpability, [with] the lower mental states being necessarily included in the higher forms of mental culpability."[71] On this spectrum, recklessness (a *mens rea* of second-degree manslaughter[72]) is a lower mental state than intent to cause serious injury,[73] and it would be "impossible" to commit manslaughter with an intent to cause serious injury without also possessing a *mens rea* of recklessness.[74] Intent to cause serious injury is therefore "narrower" than recklessness.

---

[69] *Id.*

[70] Castillo does not argue, and we do not conclude, that the other elements of New York Penal Law Section 125.20(1) are broader than the generic definition of "manslaughter."

[71] *People v. Green*, 56 N.Y.2d 427, 432 (1982) (internal quotation marks and citation omitted).

[72] N.Y. Penal Law § 125.15(1).

[73] *People v. Usher*, 34 N.Y.2d 600, 600–01 (1974); *People v. Jones*, 154 A.D.2d 619, 620 (2d Dep't 1989); *People v. Morel*, 213 A.D.2d 497, 497–98 (1st Dep't 1995).

[74] *See People v. Repanti*, 24 N.Y.3d 706, 710 (2015) ("To establish that a count is a lesser included offense . . . , a defendant must establish that it is theoretically

28

Castillo's arguments to the contrary give us little pause. First, Castillo argues that generic "manslaughter" requires an intent to kill.[75] But as discussed above, the *mens rea* of generic "manslaughter" is the less culpable mental state of recklessness.[76] Second, Castillo contends that New York manslaughter in the first degree is broader than generic "manslaughter" because New York manslaughter can be committed by omission.[77] Generic "manslaughter," however, can also be committed by reckless omission when there is an affirmative duty to act.[78] Finally, Castillo cites a subsection of the New York first degree manslaughter statute that is not relevant to this appeal.[79]

In sum, we conclude that manslaughter in the first degree under New York law, N.Y. Penal Law § 125.20(1), is narrower than the generic definition of "manslaughter." Castillo's 2006 Manslaughter Conviction under that provision therefore qualified as a "crime of violence" under the enumerated offenses in Application Note 1 of the commentary to Section 4B1.2 of the November 2015 Guidelines. Because the District Court mistakenly determined that

---

impossible to commit the greater crime without at the same time committing the lesser." (internal quotation marks and citation omitted)).

[75] Appellee Br. at 15–17.

[76] *See* Section II.D.2, *ante*.

[77] Appellee Br. at 17.

[78] *See* note 51 and accompanying text, *ante*.

[79] Appellee Br. at 16–17.

Castillo's prior conviction was not a "crime of violence," it committed procedural error.

### F. Setting Aside of Castillo's Sentence and Remand

Because the District Court committed procedural error when it concluded that Castillo's 2006 Manslaughter Conviction was not a "crime of violence" triggering a "career offender" enhancement, we are required to set aside Castillo's sentence and remand the cause for resentencing. We leave it to the District Court to determine, in the first instance, whether it is appropriate to apply the August 2016 or November 2015 Guidelines.

In remanding the cause, we are mindful that some aspect of the foregoing kabuki theater might change the District Court's judgment of the condign sentence for the instant offense. Or it might not. Either way, we recall that although the District Court "must still give 'respectful consideration' to the now-advisory Guidelines," it has the discretion to depart from an advisory range based on case-specific determinations or even a "disagreement with the [Sentencing] Commission's views."[80] Thus, where the record indicates that "the district court thought the sentence it chose was appropriate irrespective of the Guidelines range," procedural errors in calculating the advisory range will likely be harmless.[81] And in such

---

[80] *Pepper v. United States*, 562 U.S. 476, 501 (2011).

[81] *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1346 (2016); *see also United States v. Jass*, 569 F.3d 47, 68 (2d Cir. 2009) ("Where we identify procedural error in a sentence, but the record indicates clearly that 'the district court would have

circumstances, appellate review will be principally for substantive reasonableness.

## III. CONCLUSION

To summarize, we hold as follows:

(1) The government did not waive arguments based on the former "residual clause" of Guidelines Section 4B1.2(a)(2);

(2) The generic definition of "manslaughter" includes the unlawful killing of another human being recklessly;

(3) Manslaughter in the first degree under New York law, N.Y. Penal Law § 125.20(1),[82] is narrower than the generic definition of "manslaughter"; and

(4) The District Court erred when it found that Castillo's prior conviction for manslaughter in the first degree under New York law, N.Y. Penal Law § 125.20(1), did not qualify as a "crime of violence" under Application Note 1 of the commentary to Section 4B1.2 of the November 1, 2015 edition of the United States Sentencing Guidelines.

---

imposed the same sentence' in any event, the error may be deemed harmless, avoiding the need to vacate the sentence and to remand the case for resentencing." (quoting *United States v. Cavera*, 550 F.3d 180, 197 (2d Cir. 2008) (en banc))).

[82] Our holding applies only to subsection 1 of New York Penal Law Section 125.20.

For the foregoing reasons, we set aside the District Court's sentence of Castillo and **REMAND** the cause to the District Court for resentencing.

On remand, the District Court must consider, in the first instance, whether to apply the August 2016 or November 2015 Guidelines. The District Court should also consider whether the initial sentence "it chose was appropriate irrespective of the Guidelines range."[83] For where "the record indicates clearly that 'the district court would have imposed the same sentence' in any event," procedural errors such as the one committed here, "may be deemed harmless."[84]

---

[83] *Molina-Martinez*, 136 S. Ct. at 1346.

[84] *Jass*, 569 F.3d at 68 (quoting *Cavera*, 550 F.3d at 197).